der. Every taxing officer is, by virtue of his general duty, required not to allow. as taxable, any items but such as the law prescribes and allows. But it is the universal practice that a party to a proceeding in a court of justice may bind himself and those he represents by a consent, which the judge or officer may properly adopt as a basis of action, as against the party so consenting and in favor of the other party, where the consent goes merely to the course of proceeding and not to jurisdiction. The question as to what items should be allowed is not a question of jurisdiction. When the taxation is made, it is conclusive as respects the marshal and the assignee, for the present, at least, and as respects such present taxation, unless either of them excepts to the taxation. The marshal is not bound to do anything more, or to await the auditing of the accounts of the assignee, before becoming entitled to receive the amount of his bill as taxed, unless it be shown to the court that there is some fraud or bad faith on the part of the marshal or of the assignee. The bill is taxed at $49.85 less than the sum at which it is made out. I must conclude that, on an examination of it, the assignee came to the conclusion that the taxable items in it amounted to as much as the sum to which he consented. I cannot see on the face of the bill any evidence of any fraud or bad faith on the part of any person. Of the $441.35 charged in the bill, $153.75 is for various items of services by the marshal in serving warrants and notices and in taking an inventory and for commissions, and $272.60 is for disbursements in and about the custody of the property, and $15.00 is for other disbursements. The affidavit covers the performing of the services and the making of the disbursements. By general order No. 30, and the statutes in force, it is provided that there shall be certain fees for the services of the marshal in the custody of property, which fees may extend, in certain cases, to an allowance by the hour for the taking of an inventory, and to allowances by the folio for the inventory and for a copy of it, and to commissions on the value of property and on disbursements; and that, besides this, actual disbursements in the custody of property may be allowed, "which shall in all cases be passed upon by the court." Where the disbursements are set out in the bill of fees, and are verified by affidavit, as in this case, presented to the taxing officer, and are assented to by the assignee, they are passed upon by the court, for the purposes of the taxation, if the taxing officer taxes them. The disbursement of $100 charged as paid to James Turney, the deputy marshal, for services, seems in effect to have been reduced to $50, which would be for 20 days at $2.50 a day. A disbursement of $50 is charged in respect of George Turney, as keeper, for 20 days at $2.50 per day. The affidavit of James Turney sets forth that he took possession of the property November 6th, and besides placing George Turney in charge of it as a keeper, remained in charge of it until November 25th. The other disbursements in respect of custody of property are for labor, paper, twine, packing cases, services of porter, storage, cartman, use of safe, another keeper for 5 days, and some small expenses. I see nothing in all this to raise any suspicion of the good faith of the taxation.

How far this taxation may be conclusive hereafter, on the auditing of the assignee's accounts, it is not necessary now to decide. It is conclusive for the present to entitle the marshal to have the cheque countersigned. If the cheque shall not be countersigned by the register within five days after the presentation to the register of a copy of an order to be entered hereon, the judge will countersign it, on proof of such presentation and that the cheque has not been countersigned.

I do not see that the register has any lien on the moneys in the hands of the assignee, and which may be paid out to the marshal on the cheque in question, for the services of the register in making the certificates which he has made in this case.

[For prior proceedings in this litigation, see Case No. 11,677.]

---

## Case No. 11,678a.

### REINACH v. ATLANTIC & GREAT WEST. R. CO.

[See 58 Fed. 33.]

---

## Case No. 11,679.

### The REINDEER.

[See Case No. 16,145.]

---

## Case No. 11,680.

### The REINDEER.

[Blatchf. Pr. Cas. 241.] [1]

District Court, S. D. New York. Oct., 1862.

#### PRIZE—VIOLATION OF BLOCKADE.

Vessel and cargo condemned as enemy property.

In admiralty.

BETTS, District Judge. This vessel and cargo were captured, July 15, 1862, in Aransas Bay, Texas, by the United States bark Arthur. The cargo was transmitted to this port for adjudication, and the marshal returns to the monition which was issued on filing a libel against the prize October 1, 1862. that it was served by attaching the cargo and delivering the vessel to the United States government October 21, 1862. The vessel and cargo were owned by residents in Texas, and

---

[1] [Reported by Samuel Blatchford, Esq.]